**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**CommWorks Solutions, LLC**,

Plaintiff,

v.

**Digi International Inc.**,

Defendant.

Case No. _______

**COMPLAINT FOR PATENT INFRINGEMENT**

JURY TRIAL DEMANDED

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant Digi International Inc. ("Defendant"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 7,177,285 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7177285 |
| 2. | 7,463,596 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463596 |
| 3. | 7,911,979 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7911979 |
| 4. | 7,027,465 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7027465 |

| | Patent No. | Reference |
|---|---|---|
| 5. | 6,891,807 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6891807 |

2. Plaintiff seeks monetary damages.

**PARTIES**

3. CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4. On information and belief based upon public information, Defendant is a corporation incorporated under the laws of Delaware.

**JURISDICTION AND VENUE**

5. CommWorks repeats and re-alleges the allegations in paragraphs 1-4 above as though fully set forth in their entirety.

6. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and § 1338(a).

7. This Court has personal jurisdiction over Defendant, in part because Defendant does continuous and systematic business in this District, including by providing infringing products and services to the residents of the District of Minnesota that Defendant knew would be used within this District, and by soliciting business from the residents of this District. For example, Defendant is subject to personal jurisdiction in this Court because, *inter alia*, Defendant has a regular place of business in this District, and directly and through agents regularly does, solicits, and transacts business in this District.

8. In particular, Defendant has committed acts of infringement in violation of 35 U.S.C.

§ 271, and has made, used, marketed, distributed, offered for sale, sold, and/or imported infringing products in this District, and engaged in infringing conduct within and directed at or from this District. For example, Defendant has purposefully and voluntarily placed the Accused Products into the stream of commerce with the expectation that the Accused Products will be used in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Defendant has a regular and established place of business within this District and has committed acts of infringement in this District.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,177,285**

10. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

11. For purposes of this Count, the term "Accused Products" shall mean Defendant's Digi XBee Wi-Fi modules, System-on-Modules ConnectCore modules, and Wireless Vehicle Bus Adapters with Wi-Fi Protected Setup (WPS) functionality for associating devices, including, but not limited to, Digi XBee Wi-Fi (S6B)—XB2B-WFPS-001, XB2B-WFRS-001, XB2B-WFUS-001, XB2B-WFPT-001, XB2B-WFUT-001, XB2B-WFWT-001, and XB2B-WFST-001; System-on-Modules—ConnectCore 91, ConnectCore 93, ConnectCore 95, ConnectCore MP13, ConnectCore 15, ConnectCore 25, ConnectCore 8M Mini, ConnectCore 8M Nano, ConnectCore 8X, ConnectCore 6, ConnectCore 6UL, ConnectCore 6 Plus; and Wireless Vehicle Bus Adapter (WVA).

12. The USPTO duly issued U.S. Patent No. 7,177,285 (the "'285 patent") on February 13, 2007, after full and fair examination of Application No. 10/961,959, which was filed on October 8, 2004. The '285 patent is entitled "Time Based Wireless Access Provisioning."

13. CommWorks owns all substantial rights, interest, and title in and to the '285 patent,

including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

14. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the ’285 patent. Because the asserted claim of the ’285 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply.

15. The claims of the ’285 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems. The written description of the ’285 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

16. For example, at the time of the invention, wireless access to data networks was not yet conventional. Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning. ’285 patent at col. 3:13-26. Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process. *Id.* at col. 3:27-36.

17. The invention of the ’285 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—“a major technological advance.” *Id.* at col. 3:37-41. The invention of the ’285 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49. The invention of the ’285 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the ’285 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver was not conventional (or even available) at the time of the invention.

18. Defendant has directly infringed one or more claims of the ’285 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

19. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’285 patent, as detailed in **Exhibit A** (Claim Chart Regarding U.S. Patent No. 7,177,285).

20. On information and belief, Defendant has performed all steps of this claim or,

alternatively, to the extent a third party performed any step, Defendant conditioned the third party's use of the functionality of the accused instrumentalities described herein on the performance of that step. For example, on information and belief, a third party could not use the functionality of the accused instrumentality without performance of the steps recited in the claim. Defendant also controlled the manner and/or timing of the accused functionality. In other words, for a third party to utilize the accused functionality, the steps of the claim had to be performed in the infringing manner. Otherwise, the accused functionality (and the corresponding benefit) would not have been available to third parties.

21. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,463,596**

22. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

23. For purposes of this Count, the term "Accused Products" shall mean Defendant's Digi XBee Wi-Fi modules, System-on-Modules ConnectCore modules, and Wireless Vehicle Bus Adapters with Wi-Fi Protected Setup (WPS) functionality for associating devices, including, but not limited to, Digi XBee Wi-Fi (S6B) - XB2B-WFPS-001, XB2B-WFRS-001, XB2B-WFUS-001, XB2B-WFPT-001, XB2B-WFUT-001, XB2B-WFWT-001, XB2B-WFST-001; System-on-Modules–ConnectCore 91, ConnectCore 93, ConnectCore 95, ConnectCore MP13, ConnectCore 15, ConnectCore 25, ConnectCore 8M Mini, ConnectCore 8M Nano, ConnectCore 8X, ConnectCore 6, ConnectCore 6UL, ConnectCore 6 Plus; and Wireless Vehicle Bus Adapter (WVA).

24. The USPTO duly issued U.S. Patent No. 7,463,596 (the "'596 patent") on December 9, 2008, after full and fair examination of Application No. 11/673,513, which was filed on February 9, 2007. The '596 patent is entitled "Time Based Wireless Access Provisioning."

25. CommWorks owns all substantial rights, interest, and title in and to the '596 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

26. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '596 patent. Because the asserted claim of the '596 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply.

27. The claims of the '596 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

28. The written description of the '596 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29. For example, at the time of the invention, wireless access to data networks was not yet conventional. Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a

control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning. ’596 patent at col. 3:13-26. Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process. *Id.* at col. 3:27-36.

30. The invention of the ’596 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—“a major technological advance.” *Id.* at col. 3:37-41. The invention of the ’596 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49. The invention of the ’596 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the ’596 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver was not conventional (or even available) at the time of the invention.

31. Defendant has directly infringed one or more claims of the ’596 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused

Products identified above.

32. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’596 patent, as detailed in **Exhibit B** to this Complaint (Claim Chart Regarding U.S. Patent No. 7,463,596).

33. On information and belief, Defendant has performed all steps of this claim or, alternatively, to the extent a third party performed any step, Defendant conditioned the third party’s use of the functionality of the accused instrumentalities described herein on the performance of that step. For example, on information and belief, a third party could not use the functionality of the accused instrumentality without performance of the steps recited in the claim. Defendant also controlled the manner and/or timing of the accused functionality. In other words, for a third party to utilize the accused functionality, the steps of the claim had to be performed in the infringing manner. Otherwise, the accused functionality (and the corresponding benefit) would not have been available to third parties.

34. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,911,979**

35. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

36. For purposes of this Count, the term “Accused Products” shall mean Defendant’s Digi XBee Wi-Fi modules, System-on-Modules ConnectCore modules, and Wireless Vehicle Bus Adapters with Wi-Fi Protected Setup (WPS) functionality for associating devices, including, but not limited to, Digi XBee Wi-Fi (S6B) - XB2B-WFPS-001, XB2B-WFRS-001, XB2B-WFUS-

001, XB2B-WFPT-001, XB2B-WFUT-001, XB2B-WFWT-001, XB2B-WFST-001; System-on-Modules–ConnectCore 91, ConnectCore 93, ConnectCore 95, ConnectCore MP13, ConnectCore 15, ConnectCore 25, ConnectCore 8M Mini, ConnectCore 8M Nano, ConnectCore 8X, ConnectCore 6, ConnectCore 6UL, ConnectCore 6 Plus; and Wireless Vehicle Bus Adapter (WVA).

37. The USPTO duly issued U.S. Patent No. 7,911,979 (the "'979 patent") on March 22, 2011, after full and fair examination of Application No. 12/323,399, which was filed on November 25, 2008. The '979 patent is entitled "Time Based Access Provisioning System And Process." A Certificate of Correction was issued on July 19, 2011.

38. CommWorks owns all substantial rights, interest, and title in and to the '979 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

39. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '979 patent. Because the asserted claim of the '979 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply.

40. The claims of the '979 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

41. The written description of the '979 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

42. For example, at the time of the invention wireless access to data networks was not yet conventional. Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning. ’979 patent at col. 3:19-31. Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process. *Id.* at col. 3:32-41.

43. The invention of the ’979 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—“a major technological advance.” *Id.* at col. 3:42-46. The invention of the ’979 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:47-53. The invention of the ’979 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:54-62. Moreover, the structure of the devices described in the ’979 patent was not conventional at the

time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver was not conventional (or even available) at the time of the invention.

44. Defendant has directly infringed one or more claims of the ’979 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

45. Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the ’979 patent, as detailed in **Exhibit C** to this Complaint (Claim Chart Regarding U.S. Patent No. 7,911,979).

46. On information and belief, Defendant has performed all steps of this claim or, alternatively, to the extent a third party performed any step, Defendant conditioned the third party’s use of the functionality of the accused instrumentalities described herein on the performance of that step. For example, on information and belief, a third party could not use the functionality of the accused instrumentality without performance of the steps recited in the claim. Defendant also controlled the manner and/or timing of the accused functionality. In other words, for a third party to utilize the accused functionality, the steps of the claim had to be performed in the infringing manner. Otherwise, the accused functionality (and the corresponding benefit) would not have been available to third parties.

47. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,027,465**

48. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

49. For purposes of this Count, the term "Accused Products" shall mean Defendant's Digi XBee Wi-Fi modules, System-on-Modules ConnectCore modules, and Wireless Vehicle Bus Adapters, including, but not limited to, System-on-Modules – Wi-i.MX53 SOM, i.MX51, along with Digi XBee Wi-Fi (S6B) - XB2B-WFPS-001, XB2B-WFRS-001, XB2B-WFUS-001, XB2B-WFPT-001, XB2B-WFUT-001, XB2B-WFWT-001, XB2B-WFST-001; System-on-Modules - ConnectCore 6, ConnectCore 6UL, ConnectCore 8X, ConnectCore 8M Nano, ConnectCore 6 SBC, ConnectCore 6+ SBC, ConnectCore 6UL SBC Pro, ConnectCore 6N SBC, and ConnectCore 8X SBC that support 802.11n.

50. The USPTO duly issued U.S. Patent No. 7,027,465 (the "'465 patent") on April 11, 2006, after full and fair examination of Application No. 10/167,986, which was filed on June 11, 2002. The '465 patent is entitled "Method For Contention Free Traffic Detection."

51. CommWorks owns all substantial rights, interest, and title in and to the '465 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

52. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '465 patent. Because the asserted claim of the '465 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply.

53. The claims of the '465 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems.

54. The written description of the ’465 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55. For example, at the time of the invention, “conventionally … transmission differentiation based on priority was not conducted at all.” ’465 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found. *Id.* at col. 1:53-59. This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols. *Id.* at col. 1:62-65. All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge. *Id.* at col. 1:66-2:4. Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP). *Id.* Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:11-15.

56. The invention of the ’465 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need for complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:19-23, 2:60-62, 3:43. The methods of the invention of the ’465 patent further improved upon conventional network traffic routing systems by easily

finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:53-56. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need for a complex structure of the device. *Id.* at col. 2:63-66, col. 3:5-11. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:12-21.

57. Defendant has directly infringed one or more claims of the '465 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

58. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '465 patent, as detailed in Exhibit D to this Complaint (Claim Chart Regarding U.S. Patent No. 7,027,465).

59. On information and belief, Defendant has performed all steps of this claim or, alternatively, to the extent a third party performed any step, Defendant conditioned the third party's use of the functionality of the accused instrumentalities described herein on the performance of that step. For example, on information and belief, a third party could not use the functionality of the accused instrumentality without performance of the steps recited in the claim. Defendant also controlled the manner and/or timing of the accused functionality. In other words, for a third party to utilize the accused functionality, the steps of the claim had to be performed in the infringing manner. Otherwise, the accused functionality (and the corresponding benefit) would not have been

available to third parties.

60. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 6,891,807**

61. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

62. For purposes of this Count, the term "Accused Products" shall mean Defendant's Digi XBee Wi-Fi modules, System-on-Modules ConnectCore modules, and Wireless Vehicle Bus Adapters with Wi-Fi Protected Setup (WPS) functionality for associating devices, including, but not limited to, Digi XBee Wi-Fi (S6B) - XB2B-WFPS-001, XB2B-WFRS-001, XB2B-WFUS-001, XB2B-WFPT-001, XB2B-WFUT-001, XB2B-WFWT-001, XB2B-WFST-001; System-on-Modules–ConnectCore 91, ConnectCore 93, ConnectCore 95, ConnectCore MP13, ConnectCore 15, ConnectCore 25, ConnectCore 8M Mini, ConnectCore 8M Nano, ConnectCore 8X, ConnectCore 6, ConnectCore 6UL, ConnectCore 6 Plus; and Wireless Vehicle Bus Adapter (WVA).

63. The USPTO duly issued U.S. Patent No. 6,891,807 (the "'807 patent") on May 10, 2005, after full and fair examination of Application No. 10/341,847, which was filed on January 13, 2003. The '807 patent is entitled "Time Based Wireless Access Provisioning."

64. CommWorks owns all substantial rights, interest, and title in and to the '807 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

65. CommWorks or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the ’807 patent. Because the asserted claim of the ’807 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply.

66. The claims of the ’807 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

67. The written description of the ’807 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68. For example, at the time of the invention, wireless access to data networks was not yet conventional. Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning. ’807 patent at col. 3:5-18. Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process. *Id.* at col. 3:19-28.

69. The invention of the ’807 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning

process—"a major technological advance." *Id*. at col. 3:29-33. The invention of the '807 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id*. at col. 3:34-41. The invention of the '807 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:42-50. Moreover, the structure of the devices described in the '807 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver was not conventional (or even available) at the time of the invention.

70. Defendant has infringed one or more claims of the '807 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

71. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 46 of the '807 patent, as detailed in **Exhibit E** to this Complaint (Claim Chart Regarding U.S. Patent No. 6,891,807).

72. On information and belief, Defendant has performed all steps of this claim or, alternatively, to the extent a third party performed any step, Defendant conditioned the third party's use of the functionality of the accused instrumentalities described herein on the performance of

that step. For example, on information and belief, a third party could not use the functionality of the accused instrumentality without performance of the steps recited in the claim. Defendant also controlled the manner and/or timing of the accused functionality. In other words, for a third party to utilize the accused functionality, the steps of the claim had to be performed in the infringing manner. Otherwise, the accused functionality (and the corresponding benefit) would not have been available to third parties.

73. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

74. CommWorks hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

75. CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

b. Judgment that Defendant account for and pay to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

c. Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d. That this Court declare this an exceptional case and award CommWorks its reasonable

attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

e. All other and further relief as the Court may deem just and proper under the circumstances.

This 9th day of September, 2026

*/s/ Garrett D. Blanchfield*
Garrett D. Blanchfield
Reinhardt Wendorf & Blanchfield
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (651) 287-2100
g.blanchfield@rwblawfirm.com

Cortney S. Alexander
(pro hac vice application forthcoming)
cortneyalexander@kentrisley.com
Tel: (404) 855-3867
Fax: (770) 462-3299
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff